IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) NGO LOVE, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Cause No.: 5:23-cv-00734-F |
| (1) BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY, | § § § § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, NGO LOVE, LLC, files this its First Amended Complaint against BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY, and, in support of its causes of action, would respectfully show the Court the following:

### I.     PARTIES

1. Plaintiff, NGO LOVE, LLC ("NGO"), owns the property made the basis of this suit located at: 2408 N. Council Road, Bethany, Oklahoma 73008 (the "Property").

2. Based on information and belief, Defendant, BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY ("Defendant" or "Berkshire Hathaway") is a foreign entity authorized to engage in the insurance business in the State of Oklahoma and was duly served and has made an appearance herein. Defendant removed this case to this Court.

## II.     JURISDICTION AND VENUE

3.      This Honorable Court has personal jurisdiction over Defendant because at all times relevant hereto it provided insurance coverage in the State of Oklahoma and Plaintiff's causes of action arise out of its in-state business activities.

4.      At the time this lawsuit was filed and to this day, Plaintiff's principle place of business was in Oklahoma County, Oklahoma. Plaintiff is therefore a citizen of Oklahoma for diversity jurisdiction purposes. Defendant has alleged that it is a citizen of Nebraska for diversity jurisdiction purposes. Plaintiff is unable to verify the accuracy of Defendant's statement. Defendant has been duly served, appeared and answered, and removed this case to this Court.

5.      Venue is proper in the Western District of Oklahoma, because the property at issue is located in this district, the loss occurred in this district, the claims asserted herein arose from one or more acts and/or omissions that occurred in this district, and Defendant has appeared and filed its Answer with this Court.

## III.    FACTUAL BACKGROUND

6.      NGO entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting NGO's Property.

7.      The original agreement was drafted by Defendant and assigned Policy Number 02PRM031874 which was in effect from September 21, 2016 through September 21, 2017. The policy has remained in effect with subsequent renewals for one-year terms since.

8.      These subsequent renewals between Defendant and NGO include polices numbered 02PRM031874-3 and 02PRM031874-4 (the "Policies") which were in effect from

September 21, 2018 through September 21, 2019 and September 21, 20019 through September 21, 2020 (referred to as the "Policy Period") respectively.

9. Coverage under the Policies covers direct physical loss of or damage to Covered Property under the Policies as a result of a covered loss.

10. Damage caused by hail, wind, rainstorms are covered losses.

11. Through these agreements, Defendant represented to NGO that it would conduct itself in accordance with Oklahoma law and would fully and faithfully investigate and pay claims. NGO relied on said representations.

12. During the Policy Period NGO's Property sustained significant damage from hail, wind, and rainstorms that swept through Oklahoma County.

13. Hail fell and struck the Property with force severely damaging air conditioning units ("AC units"), the roof, and additional property. The damage from the hail, wind, and rainstorm also caused new interior leaks.

14. The Property was also hit by strong turbulent wind causing additional damage to the Property.

15. NGO subsequently filed a Claim pursuant to the Policies.

16. Defendant assigned the claim, claim number 00553221 (referred to as the "Claim").

**A.  Investigations, Reports, and Denial**

17. Defendant assigned the Claim to adjuster Donna Geissler ("Geissler") with Alacrity Solutions in Oklahoma City to investigate NGO's Claim and determine whether there was covered damage to the Property.

18. Geissler visited the Property on or about May 15, 2020 and documented hail damage to the Property.

19. Specifically, Geissler noted circular impact marks to the roof membrane, hail damage to rooftop metal objects such vents, the AC units, and metal siding and parapet caps.

20. The hail impact damage to the roof membrane recorded by Geissler showed protected granules had been displaced across the roof and that a dark black membrane was left behind indicating recent hail damage.

21. Geissler also recorded interior leaks inside of the building based on the water stains to the ceiling tiles. The water stains on the ceiling were not blackened from years of water damage but instead showed lighter brown concentric stains from recent interior leaks.

22. When Geissler was discussing her findings with Defendant Geissler also informed Defendant that there were recent reports of large hail fall in the area measuring at least 1.25 inches in diameter.

23. Geissler also stated that after reviewing the damage to the AC units she did not think the fragile exterior fins that were damaged by hail could be repaired by being combed back into place.

24. Defendant then immediately hired several additional "consultants" from Rimkus Consulting Group, Inc. ("Rimkus") to investigate the Claim.

25. Based on information and belief, Defendant hired Rimkus' based on Rimkus' high retention rate among insurance carriers and Defendant's knowledge of Rimkus employees'

tendency to write reports favoring insurance carriers by not properly investigating, researching, and analyzing insurance claims.

26. Employees of Rimkus, specifically Adam Hall ("Hall") and Johnny Phanthala ("Phanthala") were assigned the Claim and were asked to visit the Property, examine the damage to the roof, the AC units, and interior leaks, and to research weather events at the Property.

27. Specifically, Hall was designated to examine the AC units and Phanthala was designated to view the roof and interior water damages.

28. Hall and Phanthala visited the Property on or about May 19, 2020.

29. While at the Property Hall and Phanthala both found hail damage at the Property.

30. For example, Hall and Phanthala noted circular areas on the roof where protective granules were missing and the underlying roof membrane was black.

31. Hall and Phanthala also found hail spatter to metal objects indicating hail recently fell at the Property. In addition, Hall and Phanthala saw punctures to the roof membrane.

32. Despite the large and obvious evidence of storm damage to the roof and the AC units at the Property from a hail, wind, and rainstorm, Hall and Phanthala determined the roof was not storm damaged and further claimed that the "functionally" damaged AC units at the Property were only damaged by hail before the year 2000.

33. However, in contradiction to this conclusion, Hall himself admitted that there is no way to say there was no hail damage to the Property during the policy period.

34. Despite all of Defendant's inspectors acknowledging evidence of recent hail damage to the roof, recording recent hail damage to the roof, and reviewing weather data

that tends to support NGO's Claim for recent hail damage, Defendant arbitrarily decided to rely on Hall and Phanthala's contradictory conclusions.

35. Defendant failed to reconcile the Rimkus consultants' conclusions with their contradictory findings and also ignored Geissler's findings and comments without a reasonable basis.

36. Moreover, Defendant failed to review any independent weather research by Hall or Phanthala despite being tasked to do so, and instead only relied on a single CoreLogic Report Defendant itself presented to Hall or Phanthala.

37. Defendant sent NGO a letter on August 12, 2020 outright denying the majority of the Claim and regurgitating Hall and Phanthala's improper conclusions.

38. Defendant's August 12, 2020 also stated there was no evidence of hail damage to the roof coverings at the Property.

39. Instead, Defendant blamed the interior water leaks on a litany of excluded damage such as wear and tear, improper flashing, and mechanical damage without properly excluding hail and wind as the cause.

40. For example, Defendant failed to provide any reasonable explanation as to what caused the large circular black indentations on the roof surface which is indicative of recent hail damage.

41. Further, despite finding punctures to the roof consistent with damage from wind-blown objects from a windstorm Defendant dismissed these as excluded damage without explanation and without its retained consultants researching or discussing wind events at the Property.

42. Defendant only points to vague, inconsistent conclusions from its hired consultants even though its adjuster and consultants' comments tend to support NGO's Claim for covered damages.

43. Additionally, Hall, Phanthala, and Geissler found hail damage to rooftop metal objects and also acknowledged reports and evidence that the hail damage to the Property recently occurred.

44. However, Defendant completely ignored this evidence, and failed to write an estimate for covered hail damage to the damaged rooftop metal objects, and simply lumped these covered damages into its consultants' overall conclusions regarding the roof.

45. NGO, through counsel, requested all information and evidence relied on by Defendant to deny NGO's claim, but, based on information and belief, Berkshire refused to provide it.

46. Based on information and belief, Defendant never produced these reports to NGO and hid information that tends to support NGO's Claim for covered damages.

47. Defendant sent its final letter on October 1, 2020 regarding coverage for the hail damaged AC units at the Property.

48. In the letter Defendant admits to finding covered hail damage to AC units at the Property but then claims the damage was under the deductible and that no payment was required.

49. But, Defendant's coverage decision is based on an estimate for repairing the damaged AC units by combing the damaged and fragile fins despite Hall and Geissler's comments that the damage to the AC units were not able to be repaired by combing them.

50. Further, despite now admitting to covered hail damage at the Property, Defendant maintained its position that there was no covered damage to the roof or any other objects at the Property.

51. Defendant gave no reasonable explanation how it was able to deny one portion of NGO's Claim for hail and wind damage while also admitting to the other portion of NGO's hail and wind Claim being covered.

52. In additional to Defendant's unreasonable coverage decision, Defendant also misrepresented the coverage it offered NGO. Defendant claimed that unless damage to the Property occurred between the period of September 21, 2019 to September 21, 2020 that even wind and hail damage would not be covered despite offering coverage under previous renewal polices with NGO that Defendant continued to renew yearly.

53. Based on information and belief, Defendant made this misrepresentation and misleading statement solely in an effort to limit its liability on the Claim.

54. Defendant improperly narrowed the scope of its inspection to try and limit the amount covered damage it would find.

55. Defendant did not properly research weather data to determine if additional storm damage under previous renewal polices occurred and also failed to even research all weather events for the period of time it claimed it was liable for.

56. Defendant wrongfully focused on provisions excluding coverage and misconstrued facts to fit within the exclusions.

57. Without a reasonable basis Defendant disregarded relevant evidence of covered hail and wind damage that occurred during the Policy Period from the inspections and arbitrarily relied on Rimkus' contradictory statements and conclusions without question.

58. Defendant blindly accepted the report and sent a partial denial letter merely stating that there was no covered damage to the roof at the Property.

59. Defendant failed to reasonably evaluate and question Rimkus' report that contained unsupported conclusions and did not provide a reasonable basis for denying the Claim.

60. As a result, Defendant and its investigators assigned to the Claim failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Property. Defendant further undervalued the covered damage observed.

61. Moreover, Defendant and its adjuster performed an outcome-oriented investigation of NGO's Claim, which resulted in a biased, unfair, and inequitable evaluation of NGO's loss for the covered property.

62. To date, Defendant has not paid NGO the value of its Claim under its Policies with Defendant. As a result, NGO has incurred additional damages such as the increased costs of repair that were, and still are to this day, are a natural, probable, and foreseeable consequence of Defendant's failure to pay the amount owed on the Claim. For example, the costs of repair have increased substantially since Defendant's partial denial of the Claim.

63. Defendant's failure to pay NGO the benefits owed under the Policies have also prevented it from repairing and replacing the damaged property pursuant to the Polices.

B.     **Policy Compliance**

64.    NGO fully complied with all requirements under the Policies to properly notify the Defendant of all losses to its covered property.

### IV.    CAUSES OF ACTION

A.     **Breach of Contract**

65.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 64 of this complaint.

66.    Defendant entered into the Policies with NGO.

67.    NGO's Property sustained damage as a result of direct physical loss during the Policy Period caused by hail, wind, and rainstorms, all covered causes of loss.

68.    Defendant has breached the terms of the Policies by wrongfully denying portions of the Claim while underpaying covered damages instead of paying the full benefits owed to NGO under the Polices for a covered loss to the Property.

69.    As a result of Defendant's breach of the Polices, NGO sustained: (1) actual damages, (2) consequential damages (related to increased costs of construction and other related consequential damages), and (3) incurred reasonable and necessary attorney's fees to date.

B.     **Tortious Bad Faith**

70.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 69 of this Complaint.

71.    NGO and Defendant entered into valid and enforceable insurance policies.

72.    Defendant owed NGO the common law duty of good faith and fair dealing.

73. Defendant breached the common law duty of good faith and fair dealing by wrongfully denying portions of the Claim, underpaying covered damages, and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear.

74. Specifically, Defendant has breached the common law duty of good faith and fair dealing owed to Plaintiff by:

   a. Failing to properly investigate the roof damage;

   b. Failing to properly research weather events at the Property;

   c. Ignoring its adjuster Geissler's comments about recent large hail fall in the area of the Property, findings of hail damage to the roof and rooftop metal objects, and opinion that the AC units were not able to be repaired by combing;

   d. Failing to record the obvious evidence of covered damage across the entire roof;

   e. Omitting vital information that tends to prove NGO's Claim in Defendant's August 12, 2020, September 9, 2020, and October 1, 2020 partial denial letters;

   f. Reviewing Rimkus' facially contradictory report and failing to ask for additional evidence or explanation to support the unreasonable conclusions;

   g. Ignoring NGO's request for pertinent documents to its insurance Claim discussing damage to the Property;

   h. Determining the AC units at the Property were covered for hail and wind damage but still denying coverage for the hail and wind damaged roof and other rooftop objects;

   i. Forcing Plaintiff to obtain legal counsel to recover insurance benefits it is

        entitled to under the terms and conditions of the Polices;

j. Intentionally engaging in an outcome oriented investigation;

k. Intentionally engaging in a systematic scheme designed to save money otherwise due and owing to the Plaintiff and other similarly situated insureds as a cost-saving mechanism; and

l. Hiring investigators in an effort to solely deny NGO's Claim, despite clear evidence of covered damage to the contrary.

75. Defendant additionally breached its duty to deal fairly and act in good faith by making the following misrepresentations:

a. That there was no damage caused by hail or wind to the roof of the Property;

b. That the damaged AC units could be repaired by combing the fins;

c. That hail damaged rooftop metal objects were not covered under the Policy;

d. That there was no evidence of hail or wind damage despite finding circular impact marks, punctures, localized tears, or concentric fractures on the roof;

e. That there was no hail and windstorm created openings to the roof;

f. That any covered damage prior to the period of September 21, 2019 through September 21, 2020 would not be covered; and

g. That the interior water damages at the Property were not covered.

76. As a direct and proximate result of Defendant's unfair claims handling conduct, NGO's Claim was unnecessarily delayed, inadequately investigated, and wrongfully denied.

77. Said actions resulted in additional profits and a financial windfall to Defendant as a result of Defendant's actions resulting in additional profits and a financial premium to Defendant and damage to Plaintiff.

78. Defendant benefited from increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiff.

79. Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally or with gross negligence.

80. Defendant was aware at all times that its actions would result in the denial or underpayment of NGO's Claim, and cause extraordinary harm associated with NGO's Claim.

81. As a result of Defendant's acts and omissions, NGO sustained actual damages.

## V. CONDITIONS PRECEDENT

82. All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VI. DEMAND FOR JURY

83. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff herein requests a trial by jury.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recover actual damages, consequential damages, disgorgement of the increased financial benefits derived by Defendant's wrongful, intentional, willful, and

malicious/reckless conduct, and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/Preston J. Dugas III*
Preston J. Dugas III
pdugas@dcclawfirm.com

**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:   (817) 945-3061
Facsimile:   (682) 219-0761

**-AND-**

Terry M. McKeever
OBA#21751
tmm@fylaw.com

**FOSHEE & YAFFE LAW FIRM**
P.O. Box 890420
Oklahoma City, Oklahoma 73189
Telephone:   (405) 378-3033

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been forwardedto counsel of record in accordance with the Federal Rule of Civil Procedure, on February 1, 2024, via the Court's electronic filing system.

*via electronic service*
Lindsey P. Bruning
lbruning@zellelaw.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:   (214) 742-3000
Facsimile:   (214) 760-8994

-AND-

Sterling E. Pratt, OBA #22276
sepratt@fentonlaw.com

**FENTON, FENTON, SMITH, RENEAU & MOON**
One Leadership Square, Suite 800N
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-4671
Facsimile: (405) 235-5347

**ATTORNEYS FOR DEFENDANT**

                                                */s/Preston J. Dugas III*
                                                Preston J. Dugas III